IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE,
NASHVILLE DIVISION

KEITH A. BRINTON, an individual )
doing business as DIAMOND HEADS, )
)
    Plaintiff, ) NO. 3:04-0177
) JUDGE HAYNES
vs. )
)
RONALD JOE LOGGANS, also known )
as GONZO; doing business as )
YOURMACHINIST, )
)
    Defendant. )

## MEMORANDUM

Plaintiff, Keith Brinton, an individual doing business as Diamond Heads, filed this action under 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121 against Defendants Ronald Joe Loggans, also known as Gonzo, and William G. Taylor,[1] also known as Billy the Kid, individuals and jointly doing business as your Machinist. Plaintiff asserts claims of patent infringement under 35 U.S.C. § 271; federal trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1114; unfair trade practices under the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement and state trademark infringement under Tenn. Code Ann § 47-25-512.

Plaintiff owns a patent for a customized diamond-cut motorcycle engine head and cylinder and owns state and federal trademarks for the term "DIAMOND HEADS" in connection with his vehicle customization business. The gravamen of Plaintiff's complaint is that Defendants sell custom motorcycle engine parts similar to the one for which Plaintiff owns a

---

[1] Defendant Taylor has yet to appear in this action, either through counsel or pro se.

patent and market these parts and services using terms similar to those for which Plaintiff owns federal and state trademarks.

Before the Court is Plaintiff's motion for partial summary judgment, seeking judgment on Plaintiff's patent infringement claim on its "134 and on the Defendants' affirmative defense of invalidity, (Docket Entry No. 49), that contends in sum: (1) that this patent for his diamond-cut engine parts is valid; (2) that the Defendant has violated his rights under his '134 patent; and (3) that the Defendants' affirmative defense of invalidity is legally and factually insufficient.

In his response (Docket Entry No. 57), the Defendant Loggans contends in essence: (1) that his proof shows that Plaintiff is not the inventor of "diamond cut" parts for which Plaintiff owns a patent and that material factual disputes exist on whether Plaintiff is the inventor of the patent at issue.

For the reasons stated below, the Court concludes that material factual disputes exist on whether Plaintiff is the inventor of the patent. With these disputes, the Court cannot award partial summary judgment on Plaintiff's patent infringement claims nor on the Defendants' affirmative defense on invalidity.

## A. Review of Record[2]

Plaintiff provides custom parts and customization services for motorcycles and **provide**

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that there are material factual disputes. Thus, this section does not constitute a finding of facts under Fed.R.Civ.P. 56(d).

**aesthetic and** functional advantages. Since September 1999, Plaintiff has used the mark "DIAMOND HEADS" in connection with providing these parts and services.

In January 2003, the Tennessee Secretary of State issued two state trademark registrations to Plaintiff for the mark "DIAMOND HEADS", covering both "motorcycles and motorcycle parts" and "service, repair and customizing of motorcycles and customized motorcycle parts." In July 2003, the United States Patent and Trademark Office issued to Plaintiff U.S. Trademark Registration 2,731,216 for the mark "DIAMOND HEADS", covering both "parts for motorcycles, namely engine heads, engine cylinders, and oil coolers" and "repair, maintenance and customization for others of motorcycle parts. " On July 27, 1999 Plaintiff applied for and on September 30, 2003 Plaintiff was issued a United Stated Patent for an "Engine Cooling System and Method for Making Same." (Docket Entry NO. 1, Complaint Exhibit B attached thereto, United States Patent No. 6,626,134.

In essence, Plaintiff's patent extends to the following components:

> 1. An engine component comprising:
>    [a] at least one thermally conductive cooling fin structure, the cooling fin structure including a first surface, an oppositely facing second surface, and an edge surface in communication with the first surface and the second surface; and
>    [b] at least a portion of the edge surface of the fin structure including at least one intagliated region comprising at least two concavities of a preselected configuration therein, said edge surface defining a longitudinal axis and one of said concavities defining a longitudinal axis, said longitudinal axis of said one of said concavities being oriented at an angle to said longitudinal axis of said edge surface.
>
> \* \* \*
>
> 9. An engine component comprising:
>    [a] at least one thermally conductive cooling fin structure, the cooling fin structure including a first surface, an oppositely facing second surface, and an edge surface in communication with the first surface and the second surface; and
>    [b] at least a portion of the edge surface of the fin structure including at least one intagliated region, such that an intersection of said surface

3

and said edge surface defines a scalloped configuration.

* * *

12. A method of producing an irregular surface on a[n] engine component comprising:
> [a] providing a vehicle engine having at least one exposed component:
> [b] providing a plurality of fins on said engine component; and
> [c] engraving a portion of an edge of said fin on said engine component with an engraving tool to define a plurality of elongate concavities within a surface of said edge, wherein each concavity defines a longitudinal axis and said longitudinal axes are oriented parallel to one another, such that said portion of an edged of said fin defines a sculpted surface, a multi-faceted surface, a scalloped surface, a concave surface, an overlapping structural relief, a relieved surface, a cut surface, a rounded surface, a fluted surface, a pattern of inequalities or a textured surface.

Id. Exhibit B attached thereto, at cols. 10-12.

Defendants jointly operate "your Machinist", a Tennessee business that provides custom parts and customization services for motorcycles. As part of their business, Defendants maintain an Internet storefront with the domain name/URL www.yourMachinist.com, that was registered in March 2002. Among the custom parts that Defendants sell through their website and the Internet auction service, are "diamond cut heads and cylinders". These parts give rise to Plaintiff's infringement claims on his DIAMOND HEADS patent. Plaintiff asserts that, in describing their diamond cuffing techniques, the Defendants utilize the same basic tools and techniques as described in his '134 Patent. The Defendant performs diamond cutting by hand using "rotary tools or diamond flywheel cutters," including a rotating diamond head cutter.

Defendants' website has a photograph of such a part that Plaintiff asserts is a copy from Plaintiff's website. Id. at Exhibit J thereto. In addition, Defendants offer a "course" on motorcycle diamond cutting. The Defendant Loggans uses flywheel cutters that Plaintiff

4

contends are similarly designated as are the "130s and 150s" in the specifications of Plaintiff's '134 Patent. The Defendant cuts at the ends or the edge surface of the fins on motorcycle engine components similar to the specifications of Plaintiff's '134 Patent. The defendant also diamond cuts the edge surfaces of the cooling fins.

The Defendant Loggan proof includes his testimony as well as the testimony of Clyde Rawlings, and Rex Barbas and a copy of a 1970 trade magazine that reflects a motorcycle with features that appear to be strikingly similar to the features in Plaintiff's '134 patent. In sum, the Defendant testified that he made an earlier version of his alleged offending product in 1970 in Orlando, Florida that was based upon a product that he saw in 1969. (Docket Entry No. 50 Loggans Deposition at 24, 25 and 76). In 1988 or 1989, the Defendant saw diamond cut-cutting on a motorcycle part. Id. at 76. The defendant resumed diamond cutting on motorcycle parts in 1993 or 1994. Id. at 89. Since 1997, the Defendant has made hundreds of the models at dispute here. Id. at 29-30.

Clyde Rawlings testified that he is familiar with the diamond cutting technique for motorcycle parts and saw a photograph of a motorcycle having "scalloped fins" in a magazine in approximately 1963 or 1964 (Docket Entry No. 51, Rawlings Declaration at ¶¶ 4 and 5), but he does not recall the name of the magazine. Id. at ¶ 5. Rawlings cites "hundreds" of his visits to motorcycle shows where he observed scalloped fins on motorcycle engine heads on motorcycles both for show and for sale, including "several occasions before 1997." Id. at ¶7. Rawlings testified that Loggans made an engine component with this design at his motorcycle business during his spare time in 1989. Id. at ¶9. According to Rawlings, he kept this engine head and he returned this part to Loggans when this action was filed. Id.

5

Rex Barbas testified that he saw a motorcycle with diamond cut parts in Dayton, Florida in 1992. (Docket Entry No. 50, Barbas Deposition at p. 23). In the last twelves years, Barbas has seen more than ten motorcycles with diamond or scalloped cut fins. Id. at 23-25.

Defendant Loggans submitted an excerpt from a February 1970 issue of a "Choppers" magazine that published a black and white photograph of a product that appears to be similar to Plaintiff's '134 patent. (Docket Entry No. 57 Attachment thereto).

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are

6

irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v.

7

Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.

\* \* \*

Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire

9

record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Sixth Circuit discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

10

6.  As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.  The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Tile 35 United States Code Section 271(a) provides that "whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States. . . during the term of the patent therefor, infringes the patent." The determination of infringement under §

11

271(a) involves a two-step analysis: 'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.' O.I Corp. v. Tekmar Co., Inc., 115 F.3d 1576, 1580 (Fed. Cir. 1997) (quoting Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993)). The meaning of language used in the patent claims is a question of law. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), affd., 517 U.S. 370 (1996).

The Federal Circuit has observed that: "[i]t is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996); Phonometrics, Inc. v. Northern Telecom Inc., 133 F.3d 1459, 1464 (Fed. Cir. 1998). Intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp., 90 F.3d at 1582. A court may also rely on extrinsic evidence about the product background for the relevant technology. Id. at 1583. The patent's claim language description and prosecution history can serve as the primary sources of claim interpretation. Phillips v. AWHCorp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).

Under 35 U.S.C. § 282, a patent is presumed valid and whoever asserts that a patent is invalid bears the burden of proving its invalidity. Title 35 United States Code Section 102(a) provides that a person is entitled to a patent unless "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." (emphasis added). In addition, 35 U.S.C. §102(f) provides that a person shall be entitled to a patent unless "he did not himself invent the

12

subject matter sought to be patented."

Section 102(b) of Title 35 invalidates a person's entitlement to a patent if "<u>the invention was</u> patented or <u>described in a printed publication in this or a foreign country or in public use</u> or on sale in this country, more than one year prior to the date of the application for patent in the United States." (emphasis added). Invalidity based on public use must be proved by clear and convincing evidence. <u>Allied Colloids, Inc. v. American Cyanamid Co.</u>, 64 F.3d 1570, 1574 (Fed. Cir. 1995); 35 U.S.C. §102(g).

Corroboration of oral assertions of invalidating prior art is also required. <u>Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.</u>, 143 U.S. 275, 12 S.Ct 443 (1892). To qualify as prior art under 35 U.S.C. § 102(a) or (b), any such use must be a public use. <u>Carella</u>, 804 F.2d 135, 139 (Fed. Cir. 1986); <u>see</u> <u>also</u>, <u>In</u> <u>re</u> <u>Borst</u>, 345 F.2d 851, 854 (CCPA 1965); <u>Kimberly-Clark Corp. v. Johnson & Johnson</u>, (Fed. Cir. 1984). , 745 F.2d 1437, 1453. To determine whether an invention was in public use within the meaning of section 102(b), a court must consider the totality of the circumstances and the policies underlying the public use doctrine. <u>Baxter Int'l, Inc. v. COBE Laboratories, Inc.</u>, 88 F.3d 1054, 1058 (Fed. Cir. 1996).

Upon review of the parties' responses to their respective statements of undisputed facts (Docket Entry Nos. 57 and 61) and considering the applicable law, the Court concludes that material factual disputes exists. In sum, Defendant Loggans asserts Plaintiff is not the inventor of the '134 patent. Plaintiff relies upon proof of similar models in the 1970s, 1980s and 1990s. The priority date of the '134 Patent is July 27, 1999. Loggans's, Rawling's and Barbas's testimony about prior use and art is corroborated by a February 1970 trade magazine displaying a vehicle with a design that is similar to Plaintiff's '134 patent. Collectively, this proof creates

13

material factual issues on the impact of prior art and the products on Plaintiff's '134 patent.

To be sure, Plaintiff has submitted extensive proof from (Docket Entry Nos. 50 and 51) and many facts are undisputed. (Docket Entry No. 57). Yet, on a motion for summary judgment, "the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The Court finds that the credibility of witnesses is critical to any determination of these disputes and credibility cannot be decided on a motion for summary judgment. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Accordingly, the Plaintiff's motion for partial summary judgment (Docket Entry No. 49) should be denied. Based upon the proof presented, the Plaintiff submits a motion for a preliminary injunction that is based upon the same proof (Docket Entry No. 73). The Court would not grant a preliminary injunction considering each of the four factors to be considered on such a motion. This action is set for trial on June 13, 2006 at 9:00 a.m.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of May, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge